UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOHN N. LUPPINO, § § *Plaintiff*, § § v. § § JOHN V. YORK, STEVEN PRICE, and § BROADWAY NATIONAL BANK, § § *Defendants*. § | Civil Action No.  SA-16-CV-409-XR |

**ORDER**

On this date, the Court considered the status of the above captioned case and the parties' briefing regarding the applicability of a bankruptcy stay. After careful consideration, the Court finds that the bankruptcy stay does not apply. Further, Plaintiff has until **December 22, 2016** to respond to Defendant Broadway National Bank's Partial Motion to Dismiss (Docket no. 7). Finally, Plaintiff is ordered to show cause by **December 22, 2016** as to why his claims against Defendant Steven Price should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to provide proof of service.

**BACKGROUND**

Plaintiff John N. Luppino is a citizen of Georgia who filed this diversity action against Defendants John V. York, Steven Price, and Broadway National Bank—all citizens of Texas. Docket no. 1 at 1–2. Luppino brings causes of action for fraud and breach of contract against all defendants, and seeks to hold the individual defendants liable under the Texas Theft Liability Act and the Texas Securities Act as well. *Id.* at 6–10.

The factual allegations behind these causes of action surround investments that Luppino made pursuant to a series of subscription agreements. *Id.* at 2. Luppino alleges that Defendants

1

Price and York are the only two members of Republic Resources, a Texas oil and gas LLC that leases land for drilling. *Id*. According to the complaint, a former member of Republic who is not a party to this lawsuit, Bob Stinziano, solicited an investment from Luppino. *Id*. Republic and Luppino then entered into several subscription agreements, entitling Luppino to revenue distributions based on his factional share of oil and gas sales from various well projects in exchange for his investments. *Id*. Luppino does not allege that Price or York were parties to any of the subscription agreements or that Price or York had any part in negotiating or soliciting Luppino's participation in them. *Id*.

Luppino alleges that pursuant to the investment agreements, he deposited cash payments earmarked for a specific project deposited in an escrow account with Defendant Broadway National bank, and these funds were to be withdrawn by Republic when enough funds earmarked for a certain drilling program were deposited to complete that specific program. *Id*. at 4–5. Withdrawn funds were then to be applied to the program for which they were invested. *Id*. at 5.

Luppino alleges that once Republic withdrew the funds, it did not apply them to specific projects, but instead used them "carte blanche." *Id*. The heart of Luppino's allegations is that these funds were paid to other companies in which Price and York owned interests, constituting conversion of the investment funds "under the guise that those funds would be applied to the costs of specific drilling projects." *Id*. at 5.

Luppino filed this lawsuit on May 3, 2016. Docket no. 1. On September 1, 2016, the due date for his answer, York filed a Notice of Stay, alerting the Court to a pending bankruptcy proceeding involving Republic but not Price or York. Docket no. 8 at 2 (referencing *In re Republic Resources*, 5:15-BK-52637-CAG). Characterizing Luppino's lawsuit as "an attempt to collect from its members a debt owed by Republic Resources," York argued in his Notice that

the Bankruptcy Code's automatic stay applies to this action by virtue of Republic's bankruptcy, even though Price and York themselves have not filed for bankruptcy. *Id*. at 2 (citing 11 U.S.C. § 362(a)(6)).

On September 2, 2016, the Court requested briefing from the parties regarding the impact of a stay arising from Republic's bankruptcy. Docket no. 9. In particular, the Court was concerned as to whether this stay would apply to this case—either in full or in part—because Republic is not a party to this action. *Id*. Luppino, York, and Broadway responded.[1] Docket nos. 10, 11, 12. Luppino and Broadway both oppose a stay. Docket nos. 10, 11. York, on the other hand, supports a stay. Docket no. 12.

## DISCUSSION

### I. Whether a Stay Applies

#### a. Legal Background

Section 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The purposes of this automatic stay "are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985).

"By its terms the automatic stay applies *only to the debtor*, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors." *Id*. at 716 (emphasis added). The Fifth Circuit has further noted that "[s]ection 362 is rarely . . . a valid basis on

---

[1] Defendant Price did not file an advisory, but, as will be discussed, there is no indication that he has been served with process in this lawsuit. Further, as York points out, because Price is in essentially the same legal position as York on the basis of Luppino's allegations, "the stay's applicability to the case against York is presumably identical to its applicability to the case against Price." Docket no. 12 at 4 n.1.

which to stay actions against non-debtors." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001); *see also Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983) There are, however, two primary exceptions to this general rule. *Labaty v. UWT, Inc.*, SA-13-CV-389-XR, 2013 WL 4520562, at *7 (W.D. Tex. Aug. 26, 2013). First, a bankruptcy stay may be extended to stay proceedings against non-bankrupt third parties if there are "unusual circumstances" showing "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Services, Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). The party seeking to invoke the stay through this exception has the burden to show that it is applicable. *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010). Second, the district court may also grant a discretionary stay of the action against non-bankrupt parties, though this discretion is limited. *Wedgeworth*, 706 F.2d at 544–45.

York presents several arguments in favor of the stay, though he does not address a discretionary stay. Docket no. 12. His main argument is essentially that Luppino's claims are against Republic, not Price or York, or at least that they "necessarily implicate" Republic. *See id*. This appears to be an argument that there is such an identity between Republic and the individual Defendants that Republic can be considered the real party defendant.[2] He argues that this is the case because any claims against Price and York seek to pierce Republic's corporate veil, which necessarily implicates Republic's liability and therefore violates the stay. *Id*. at 6–10. He also argues that this is the case because Republic must be joined as an indispensable party under Federal Rule of Civil Procedure 19(a), which would violate the stay. *Id*. at 5–6. York

---

[2] York's argument, however, does not discuss this standard or cite the seminal case in this area, *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986).

4

alternatively argues that the bankruptcy trustee in Republic's bankruptcy proceeding has exclusive standing to pursue Luppino's claims against York on behalf of Republic. *Id*. at 10–14.

Luppino and Broadway both oppose a stay and present similar arguments.[3] They argue that Republic, the debtor, is not a party to this action, and that there are no unusual circumstances that justify this case fitting into one of the exceptions to the background rule that the bankruptcy stay normally does not apply to non-debtors. To the extent that Republic is involved in this case, they argue, it is "in name only" as the "vehicle [used] to wrongfully allocate investor funds back to York and Price." Docket no. 11 at 3.

### b. Piercing the corporate veil as an "unusual circumstance" showing such an "identity of parties" that the Republic can be considered a real party defendant.

York's characterization of Luppino's claims as being premised on a piercing of Republic's corporate veil does not indicate that there is a sufficient "identity of parties" between Republic and the individual defendants to make Republic a real party defendant. The Court's reasons for reaching this conclusion are best explained in the context of a case upon which York relies heavily—*In re Fiddler's Creek, LLC,* 9:10-BK-03846-ALP, 2010 WL 6618876 (Bankr. M.D. Fla. Sept. 15, 2010).

In *Fiddler's Creek*, a group of corporate and LLC debtors that operated a golf club filed a motion to enforce the automatic stay against class of plaintiffs that sued a single officer of the debtors who himself was not a debtor. *Fiddler's Creek*, 2010 WL 6618876, at *1. The plaintiffs sought to hold the officer defendant liable for breaching golf club membership agreements between them and the debtors, and their complaint specifically included a veil piercing theory. *Id*. The court recognized that piercing the corporate veil was not itself a cause of action, but

---

[3] Broadway also argues that if a stay applies, it should apply to the whole action, not just to the claims against Price and York. Docket no. 10 at 4. Because the Court finds that the stay does not apply at all, the Court need not reach this argument.

"[r]ather . . . a means of imposing liability on the shareholder based on an underlying cause of action for which the corporation is liable, including tort liability or liability for breach of contract."[4] *Id*. at *2. With this premise, the court reasoned that the golf club debtors were real parties in interest because the plaintiffs would only be able to hold the officer defendant liable if they first established the debtors' liability. *Id*. The court held that the class action lawsuit was void *ab initio* as a violation of the bankruptcy stay. *Id*. at *9.

To reach these conclusions, the court in *Fiddler's Creek* analyzed precedent applying the "unusual circumstances" exception to explore when courts find a sufficient "identity of interests" between non-debtor officers of debtor corporations. The court's analysis of this precedent makes clear several key facts used by the court to show that the golf club debtors were the real parties defendants in the class action lawsuit. The court showed concern over the potential for the debtors to be collaterally estopped from re-litigating issues relating to their officer in the class action[5] and that the debtors would lose the ability to assert counterclaims. *Id*. at *3, 8–9. In addition, the court emphasized overlapping issues and sources of proof between the class action that was "ostensibly" against the officer and any related Chapter 11 claims made against the golf club debtors because "many of the putative class members, including certain of the Plaintiffs, [had] filed proofs of claims in these Chapter 11 cases." *Id*. at *1, *4, *6–8. The court repeatedly focused on the likelihood that the golf club debtors would be required to indemnify their officer for any liability arising from the class action.[6] *Id*. at 4–5, 7. At bottom, the court said that "it is

---

[4] The court was applying Florida law, but Texas law is similar. *Matlock v. McCormick*, 948 S.W.2d 308, 311 (Tex. App.—San Antonio 1997, no writ) ("In and of itself, however, piercing the corporate veil is not an independent cause of action. Rather, it is a means of imposing liability on an underlying cause of action."); *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013).

[5] *See In re Johns-Manville Corp.*, 26 B.R. 420, 429 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984) *and appeal allowed, decision vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984); *In re Sudbury, Inc.*, 140 B.R. 461, 463 (Bankr. N.D. Ohio 1992); *In re Am. Film Techs., Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994)

[6] *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 1990); *In re Sudbury*, 140 B.R. at 464.

clear that [the officer defendant] cannot be found to be the alter ego of the Golf Club Debtors . . . unless and until the alleged claims of the Plaintiffs against the Golf Club Debtors are proven." *Id*. at 8.

Turning to the present case, the Court finds that the "unusual circumstances" that justified an extension of the stay in *Fiddler's Creek* are not present here, nor are any others. While the allegations of the class action plaintiffs in *Fiddler's Creek* expressly relied upon a veil piercing theory, Luppino's complaint does not include such a claim. Though some of the complaint implicates Republic, the main allegation is that Republic was manipulated or used by Price and York, in their individual capacities, in furtherance of their own "orchestrated scheme." Luppino's allegations, unlike those in *Fiddler's Creek*, are not premised on the piercing theory that the court there found to be so important.

Further, even if Luppino's allegations are construed as seeking to hold Price and York liable for the actions of Republic through an unmentioned alter ego theory, the circumstances of this case do not indicate that Republic is a real party defendant or stands to lose anything from this litigation, unlike the debtors in *Fiddler's Creek*. The court in *Fiddler's Creek* continually referenced related and ongoing claims by the same or similar plaintiffs against the debtors as part of the Chapter 11 proceeding; there is no indication that any ancillary claims are being made by Luppino or similarly situated plaintiffs against Republic. As a result, concerns over collateral estoppel are misplaced, and are not raised by any of the parties. Similarly, the *Fiddler's Creek* concern over the debtors being precluded from bringing counterclaims has not been raised in this case, as there is no indication that Republic has counterclaims that it could or must assert against Luppino. Moreover, there is no argument that Republic would be required to indemnify Price or

7

York for their potential liability in the present case, or any other reason why Republic would be responsible for a judgment against Price or York.

York's attempt to analogize the unusual circumstances of *Fiddler's Creek* to the facts of this case[7] overlooks the specific differences between the cases because it does not explain how Republic could be held liable or in effect forced to pay a judgment on the basis of this litigation. In other words, the fact that Luppino's complaint may implicate the actions of Republic does not indicate that Republic will be harmed by or liable for a judgment obtained against York and Price on the basis of these actions.

Notwithstanding the above, the Court is receptive to York's positions in a general sense. Broadly, York questions how he can breach contracts to which he was not a party, and he challenges the adequacy of Luppino's fraud allegations based on misrepresentations made by he and Price themselves. The Court will entertain these issues if and when the individual defendants file motions to dismiss under Rules 12(b)(6) and 9(b). For now, the Court simply holds that Republic and the individual defendants are not so closely identified so as to make Republic a real party defendant in this case, and declines to extend the bankruptcy stay to the individual defendants.

c. **Joinder under Federal Rule of Civil Procedure 19**

York argues that Republic is a necessary and indispensable party to this litigation under Federal Rule of Civil Procedure 19(a), and that as a result, "the Court should abate this case until Republic can be joined without violation of the automatic stay." Docket no. 12 at 6. Whether this

---

[7] York states that "[t]he *Fiddler's Creek* facts are analogous to the facts in this case. Here, as in *Fiddler's Creek*, the defendant is not a party to the contract alleged to have been breached and would be liable to the plaintiff solely by way of veil piercing, which—in Texas, as in Florida—is not a stand alone cause of action and is instead a theory of liability that cannot be adjudicated without the threshold question of whether the contracting party breached the contract. Like the plaintiffs' veil piercing theory in *Fiddler's Creek*, any purported right Luppino has to recover against York would necessarily be predicated on the underlying liability of Republic, which is cannot [sic] be determined without running afoul of the automatic stay." Docket no. 12 at 8.

is an argument that Republic's bankruptcy stay should be extended to cover Price and York or an argument that a separate abatement should apply to this action pending resolution of Republic's bankruptcy, the argument fails.

Rule 19(a) applies only when joinder of a required party is "feasible." *See* FED. R. CIV. P. 19(a) (titled "Persons Required to be Joined if Feasible"). Where joinder of a non-party is *not* feasible, a determination of whether the case should proceed in the absence of that party requires the additional step of an analysis under subsection (b) of Rule 19. FED. R. CIV. P. 19(b) (titled "When Joinder is Not Feasible"). This provision provides that "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" based on a non-exhaustive list of four factors. *Id*. The United States Supreme Court has summed up this analytical framework of Rule 19 as follows:

> Subdivision (a) of Rule 19 states the principles that determine when persons or entities must be joined in a suit. The Rule instructs that nonjoinder even of a required person does not always result in dismissal. Subdivision (a) opens by noting that it addresses joinder "if Feasible." *Where joinder is not feasible, the question whether the action should proceed turns on the factors outlined in subdivision (b)*. The considerations set forth in subdivision (b) are nonexclusive, as made clear by the introductory statement that "[t]he factors for the court to consider include." Fed. Rule Civ. Proc. 19(b).

*Republic of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008) (emphasis added).

Although York addresses the requirements contained in Rule 19(a)'s subparts for finding a non-party to be required in an action, he overlooks that Rule 19(a) mandates joinder only if joinder is feasible. But joinder does not appear to be feasible here in the face of the bankruptcy stay. Several courts have taken the additional step of conducting a Rule 19(b) analysis in similar circumstances—where the parties dispute whether a case should proceed in the absence of a non-party debtor—with the implication being that a bankruptcy stay renders joinder of non-party

debtors unfeasible. *E.g., Old Dominion Freight Lines, Inc. v. Amazon.com, Inc.*, CIV.A. 02-1006-A, 2002 WL 32123993, at *3 (E.D. Va. Oct. 24, 2002) ("Because [the non-party debtor] should be joined under Rule 19(a), but because of the bankruptcy stay cannot be, this Court must determine whether the action should proceed with the current parties or should instead be dismissed. Fed. R. Civ. Pro. 19(b)."); *Webster Bus. Credit Corp. v. Henricks Jewelry, Inc.*, 207-CV-601-FTM-29DNF, 2008 WL 2222203, at *2 (M.D. Fla. May 27, 2008) ("Because of the automatic bankruptcy stay, [the non-party debtor] cannot be made a party to this case. After balancing the four factors [of 19(b)] it is clear that dismissal is appropriate."). Indeed, York's briefing admits as much when it states that "the Court should abate this case until Republic can be joined without violation of the automatic stay." Docket no. 12 at 6.

Instead of simply requesting abatement of this case because joinder is not presently feasible, York must make the showing required under Rule 19(b) precisely because Republic cannot now be feasibly joined. Yet York does not undertake a Rule 19(b) analysis, nor does he cite Rule 19(b) and its relevant factors in his briefing. *See* Docket no. 12 at 5–6. It would be inappropriate for the Court to conduct its own Rule 19(b) analysis without the benefit of briefing from any of the parties, particularly where this question comes to the Court in the context of a request to extend the bankruptcy stay and the "unusual circumstances" standard. In short, there has been no showing that "in equity and good conscience, the action should [not] proceed among the existing parties" due to a failure to join an indispensable party and therefore that the bankruptcy stay should apply. FED. R. CIV. P. 19(b).

### d. Whether the bankruptcy trustee has exclusive standing to assert Luppino's claims.

The Court further finds no merit in York's argument that Republic's bankruptcy trustee "has exclusive standing to bring claims for misappropriation of investor funds." *See* Docket no.

10

12 at 6–10. York argues that "Luppino's causes of action . . . all derive from the allegation that the individuals mismanaged Republic's cash and harmed the company's value," which would make these individuals liable to Republic and give Republic's bankruptcy trustee exclusive standing to assert these claims. Docket no. 12 at 11 (citing Docket no. 1, ¶ 36[8]). This characterization reads into the complaint an allegation that is not there. Luppino's complaint does not state that Republic was devalued or otherwise harmed by Price and York's alleged mismanagement of Republic funds. Luppino's complaint alleges simply that funds invested by Luppino were not used to complete the specific drilling projects for which they were earmarked as part of the subscription agreements. As such, there is no basis for Price and York being potentially liable exclusively to the bankruptcy trustee (and not to Luppino).

## II.     Defendant Broadway's Motion to Dismiss

On August 22, 2016, Defendant Broadway National Bank filed a partial motion to dismiss pursuant to Rules 12(b)(6) and 9(b), seeking to dismiss Luppino's fraud claim against it. Docket no. 7. No response was filed by Luppino, but before the due date for a response, York filed his Notice of Stay on September 1, 2016. Docket no. 8. Having now decided that the stay does not apply, the Court will take up Broadway's motion to dismiss after giving Luppino a full chance to respond. Accordingly, Luppino's response to this motion is due by **December 22, 2016**.

## III.    Status of Defendant Price

As a final matter, the Court considers the status of this case with regard to Defendant Price. This cause of action was commenced by the filing of the Luppino's complaint on May 3, 2016. Even though the 90 day time limit for service of process expired in August, the Court has

---

[8] In its entirety, this paragraph of Luppino's allegations reads: "As a result of the orchestrated scheme between Republic and Broadway, at the direction of York and Price, Luppino was severely damaged financially in the amount of the loss of his investment." Docket no. 1 at 5, ¶ 36.

11

no record that Price has been served or has agreed to waive service. Rule 4(c) of the Federal Rules of Civil Procedure provides in pertinent part: "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." FED. R. CIV. P. 4(c)(1). Proof of service must be made to the court by filing the server's affidavit. FED. R. CIV. P. 4(l)(1). Rule 4 further provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

The 90-day time period for service has expired in this case and there is no indication that Price has been properly served or has agreed to waive service. Luppino is therefore ORDERED to show cause in writing on or before **December 22, 2016**, why his claims against Price should not be dismissed under Rule 4(m). Failure to respond by that date will result in these claims being dismissed.

## CONCLUSION

For the foregoing reasons, the Court finds that this action is not stayed as a result of Republic's pending bankruptcy. In addition, Luppino is given until **December 22, 2016** to respond to Defendant Broadway's Motion to Dismiss (Docket no. 7). Finally, Luppino is ordered to show cause by **December 22, 2016** as to why his claims against Defendant Price should not be dismissed under Rule 4(m).

It is so ORDERED.

SIGNED this 8th day of December, 2016.

                                            _____
                                            XAVIER RODRIGUEZ
                                            UNITED STATES DISTRICT JUDGE